# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ARNULFO CARATACHEA,

    Petitioner,

                    -vs-

WARDEN, Noble Correctional Institution,

    Respondent.

Case No. 3:10-cv-464

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case filed *pro se* by Petitioner Arnulfo Caratachea and is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases. Petitioner is serving a ten year sentence imposed by the Greene County Common Pleas Court upon his conviction for complicity in trafficking in heroin in violation of Ohio Revised Code § 2925.03(A)(1).

Petitioner pleads the following two Grounds for Relief:

> **Ground One:** Denial of Effective Assistance of Counsel.
>
> **Supporting Facts:** By pushing me and permitting me to enter a plea and sentence contrary to law which I did not fully understand.
>
> **Ground Two:** Conviction obtained by counseled plea of guilt which was not made voluntarily with understanding of total outcome.
>
> **Supporting Facts:** I could not, barely could, understand English nor what counsel plead too [sic] the court which resulted in a 10 year sentence on a plea and no knowledge I would get such time.

(Petition, Doc. No. 1, PageID 4.)

After sentencing, Petitioner appealed to the Greene County Court of Appeals which affirmed the conviction and sentence. *State v. Caratachea,* 2010 Ohio App. LEXIS 3338 (Ohio App. 2nd Dist. July 16, 2010).  The Ohio Supreme Court declined to exercise jurisdiction over Petitioner's appeal. *State v. Caratachea,* 2010 Ohio LEXIS 2943 (Dec. 1, 2010).

In return for Petitioner's plea to one count, the State agreed to dismissal of one count each of engaging in a pattern of corrupt activity, conspiracy to commit engaging in a pattern of corrupt activity, complicity to trafficking in heroin, complicity to trafficking in cocaine, and possession of cocaine, and two counts of possession of criminal tools.  *State v. Caratachea,* 2010 Ohio App. LEXIS 3338 ¶ 1 (Ohio App. 2nd Dist.  July 16, 2010).

In his first assignment of error, Petitioner claimed his plea was made without fully understanding because he could not understand English very well.  *Id.*  ¶ 5.  The Court of Appeals held:

> [*P8] We have reviewed the transcript of the plea hearing and find nothing to support Caratachea's contention that his plea was not made knowingly, intelligently, and voluntarily, either due to his inability to understand English or otherwise. According to the transcript, an English-Spanish interpreter was provided for Caratachea during the plea hearing, and the interpreter had assisted defense counsel in consulting with Caratachea. Before addressing Caratachea directly, the trial court inquired about the interpreter's qualifications.  The interpreter stated under oath that he/she has been speaking Spanish for approximately 15 years, he/she has had training with VocalLink for legal and medical interpretation, he/she has provided interpreter services in several counties and has interpreted in court more than 30 times. The interpreter stated that he/she had interpreted in primarily criminal cases, but had also done custody hearings, divorce hearings, and voir dire. The interpreter was not related to or close friends with anyone involved in Caratachea's case. The interpreter understood that he/she was to be a neutral party to facilitate communication and not to offer advice or opinions; the interpreter agreed to interpret verbatim from the English language to the Spanish language. The parties expressed they were satisfied with the interpreter's

-2-

qualifications; the interpreter was sworn before the court proceeded further. Evid.R. 604; R.C. 2301.12. 3 The record does not reflect any deficiencies in the interpreter's performance nor does Caratachea point to any.

 [*P9]  In addition, the record reflects that the trial court complied with Crim.R. 11(C) and that Caratachea's plea was knowing, intelligent, and voluntary. During the trial court's questioning of Caratachea about his desire to plead guilty, Caratachea stated that he had signed a petition to enter a plea of guilty, that it had been read to him by his attorney, that he had understood it and agreed with it, and that he had fully consulted with his attorney regarding the petition. Caratachea informed the court that he was 18 years old, had three years of schooling, and was not able to read or write English well. Upon telling the court that he was not a United States citizen, the trial court informed Caratachea that his conviction may have certain consequences, such as deportation, exclusion for re-entry, and denial of naturalization. Caratachea expressed that he understood and wished to proceed.

 [*P10]  Caratachea stated that he was represented by counsel, had been advised of his constitutional rights, and was satisfied with his counsel's services. Counsel had answered all of Caratachea's questions, and the two had discussed his rights and the guilty plea through an interpreter. The court informed Caratachea of his constitutional rights and that  [**7] he would be waiving those rights if he entered a guilty plea. Caratachea stated that he understood and wanted to go forward with the plea.

 [*P11]  Caratachea denied that he had been coerced into entering a plea or that he had any disability that might affect his ability to make "free and voluntary choices." Caratachea further denied taking any drugs or alcohol that might affect his ability to understand the plea hearing.

 [*P12]  The court confirmed that Caratachea was pleading to Count V of the indictment (complicity to trafficking in heroin), which carried a mandatory ten-year prison term, and that all other counts and specifications would be dismissed. Caratachea expressly consented to that agreement and denied that any other promises had been made to him. Caratachea agreed that the facts as stated by the prosecutor to support the charge were the facts to which he wished to enter a plea of guilty and that he was guilty. Caratachea understood that maximum prison term and fine that could be imposed, including

that the ten-year prison term was mandatory, did not allow for good time credit, and was subject to bad time. The court informed Caratachea that it would be required to suspend his driver's license. The court further told Caratachea that he would be subject to a mandatory term of five years of post-release control and the consequences of violating post-release control. Caratachea agreed that he wished to waive a presentence investigation and to proceed with sentencing at that time.

[*P13] With this information, Caratachea again expressed that he wished to plead guilty. Caratachea entered a plea of guilty, and the court found that it was made knowingly, intelligently, and voluntarily. Based on the record, we find no evidence that Caratachea's plea was not made knowingly, intelligently, and voluntarily.

*Id.* ¶¶ 8-13.

In his second assignment of error, Petitioner asserted that he had received ineffective assistance of trial counsel in that his attorney had told him that the least sentence he could receive was the ten-year mandatory minimum. On this claim, the Court of Appeals held:

> [*P16] Caratachea pled guilty to complicity to trafficking in heroin in an amount equal to or exceeding 250 grams, in violation of R.C. 2925.03(A)(1) and R.C. 2923.03(A)(2), a first degree felony. According to the prosecutor's statement of the facts supporting this charge, an individual named Ihab Hamed delivered 494.94 grams of heroin to a confidential informant working for the ACE Task Force. Later that day, the Task Force took steps to arrange the delivery of the payment of $ 40,000 to the individual who provided the heroin to Mr. Hamed; Caratachea showed up to accept payment for the delivery of 494.94 grams of heroin.
>
> [*P17] The criminal penalty for trafficking in heroin is set forth in R.C. 2925.03(C)(6). Where the amount of heroin equals or exceeds 250 grams, "trafficking in heroin is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code." R.C.

>   2925.03(C)(6)(g).
>
>   [*P18]  The maximum prison term for a first degree felony is ten years. R.C. 2929.14(A)(1). Accordingly, under R.C. 2925.03(C)(6)(g), an offender who commits trafficking in heroin in an amount equal to or greater than 250 grams, such as Caratachea, must be sentenced to a mandatory prison term of ten years. The court may also elect to impose an additional term for the major drug offender specification; in this case, the trial court did not.

*Id.* at ¶¶ 16-18.

Thus the Second District Court of Appeals ruled on both questions Petitioner presents to this Court.  The United States Supreme Court has recently elaborated on the standard of review of state court decisions on claims later raised in federal habeas corpus:

>   The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law.  See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).   To these ends, § 2254(d)(1) provides:
>
>   (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."
>
>   As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  529 U.S., at 404-405, 120 S.Ct. 1495.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  *Id.,* at 405-406, 120 S. Ct. 1495.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our

> decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407-408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 693-94 (2002).

> AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005).

The question which this Court must then decide is whether the Second District Court of Appeals decision was an objectively unreasonable application of clearly established United States Supreme Court law.

With respect to the claim of ineffective assistance of trial counsel, governing standard for

is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir. 1987).  *See generally*

Annotation, 26 ALR Fed 218.

The Second District Court of Appeals determined under Ohio law the minimum sentence which could be imposed, given Petitioner's offense of conviction and the amount of heroin involved, was ten years. Thus when his attorney advised Petitioner that that was the least sentence he could received, that was accurate advice under Ohio law, which governs this question. Because the advice was correct, Petitioner's trial attorney was not deficient in his practice for giving that advice. Petitioner's First Ground for Relief is without merit.

With respect to the Second Ground for Relief, the trial court took account of Petitioner's limited ability in the English language and provided a Spanish language interpreter. The Court of Appeals found that the interpreter's qualifications were shown on the record and that with the assistance of the interpreter Petitioner indicated his full understanding and acceptance of the plea agreement. Therefore the Second Ground for Relief is also without merit.

**Conclusion**

On the basis of the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice on the merits. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

December 16, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).